United States District Court
Southern District of Texas
**ENTERED**
July 18, 2017
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT
COURT FOR THE SOUTHERN DISTRICT
OF TEXAS HOUSTON DIVISION

| | |
|---|---|
| BULBS 4 EAST SIDE, INC., d/b/a JUST BULBS, § § § | |
| Plaintiff, § | |
| § | C.A. No. 4:14-cv-03672 |
| VS. § § | |
| GREGORY RICKS, d/b/a MOTHERBOARDS.COM, § § § | |
| Defendant. § | |

## MEMORANDUM AND ORDER

Before the Court is Plaintiff's Motion for Summary Judgment for a permanent injunction, to direct transfer from defendant to plaintiff of the domain name www.justbulbs.com (the "Domain Name"), and to determine and award damages, attorney's fees and costs, and other relief the Court deems just and appropriate.

Plaintiff Bulbs 4 East Side Inc., d/b/a Just Bulb ("Just Bulbs") established in this case he possessed a valid, incontestable trademark registration in JUST BULBS for light bulbs. Additionally, Hon. Judge Melinda Harmon determined Defendant Gregory Ricks ("Defendant" or "Ricks"), individually and d/b/a/ MOTHERBOARDS.COM, as a matter of law engaged in cybersquatting, in violation of the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. §1125(d) (the ACPA). Thereafter, by order dated October 12, 2016, the Court granted Just Bulb's motion to amend the complaint to include only claims under the ACPA for cybersquatting.

**Summary Judgment Standard**

The United States Supreme Court has held that Rule 56 of the Federal Rules of Civil Procedures mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish an essential element of that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Rule 56 (c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). This standard provides that the mere existence of some factual dispute will not defeat a motion for summary judgment. *See Krim v. Banc Texas Group, Inc.*, 989 F.2d 1435, 1442( (5th Cir. 1993); *Thomas v. Price*, 975 F.2d 231, 235 (5th Cir. 1992). Rather, Rule 56 mandates that the fact dispute be genuine and material. *Willis v. Roche Biomedical Laboratories, Inc.*, 61 F.3d 313, 314 (5th Cir. 1995). The substantive law determines which facts are material, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986), and the Court must view these facts and the inferences to be drawn from them in the light most favorable to the opposing the motion. *Matsushita Elec. Indus. Co, Ltd. V. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (Citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)); *Kelley v. Price Macemon, Inc.*, 992 F.2d 1408, 1413 (5th Cir. 1993), cert. denied, 510 U.S. 10433 (1994); *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986).

The party moving for summary judgment bears the initial burden of showing an absence of evidence to support the non-moving party's case. *Celotex*, 477 U.S. 317 at 322-27. Once this burden has been met, the non-moving party can resist the motion for summary judgment by making a positive showing that a genuine dispute of material fact does indeed exist that it consists of more than bare allegations in briefs and pleadings. *Anderson*, 477 U.S. at 250. The non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 325. "This burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Once the parties have submitted evidence of contradictory facts, justifiable inferences are to be drawn in the light most favorable to the non-movant. *Anderson*, 477 U.S. at 255.

Even if the standards of Rule 56 are met, a court may deny a motion for summary judgment if, in its discretion, it determines that "a better course would be to proceed to a full trial." *Anderson*, 477 U.S. at 257; *Veillon v. Exploration Services, Inc.*, 875 F.2d 1197, 1200 (5th Cir. 1989).

**Procedural History**

Plaintiff brought forth three claims against Ricks for Federal Trademark Infringement, Cybersquatting, and violating the Texas Anti-Dilution Statute. Judge Harmon rejected Plaintiff's claims Ricks violated the Federal Trademark Infringement and Texas Anti-Dilution Statute and granted Plaintiff's motion for summary judgment that Ricks engaged in cybersquatting and violated the ACPA. In determining that Plaintiff was entitled to summary judgment on its ACPA claim Judge Harmon discussed

the three elements of that claim: (1) its mark is a distinctive or famous mark entitled to protection; (2) [defendant's] domain names are identical or confusingly similar to [plaintiff's] mark; and (3) [defendant] registered the domain names with bad faith intent to profit from them. *Texas Int'l Prop. Associates v. Hoerbiger Holding AG*, 624 F. Supp. 2d 582, 587 (N.D. Tex. 2009). With respect to the first two elements, Judge Harmon determined "Just Bulbs" is a distinctive mark entitled to protection, and Ricks had not contested the Domain Name is identical to Plaintiff's trademark. Judge Harmon's analysis for the third prong then focused on nine non-exclusive factors set forth in *TMI, Inc. v. Maxwell*, 368 F. 3d 433, 436 (5th Cir. 2004). The factors are:

I. The trademark or other intellectual property rights of the person, if any, in the domain name;
II. The extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly use to identify that person;
III. The person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;
IV. The person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;
V. The person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark by, creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;
VI. the person's offer to transfer, sell, or otherwise assign the domain name to the mark use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;
VII. the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;
VIII. the person's registration or acquisition of multiple domain name which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and

4

IX.     the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c) of this section.

Judge Harmon decided seven of the nine factors suggested bad faith on the part of Ricks, pointing to Ricks history of cybersquatting and the prior World Intellectual Property Organization ("WIPO") decisions putting Ricks on notice his conduct was illegal. Viewing the "totality of the circumstances" the Court concluded the Plaintiff demonstrated Ricks acted in bad faith.

After Judge Harmon's decisions Plaintiff amended his complaint to only include the ACPA claim for cybersquatting. Plaintiff now, after the parties consented to have the undersigned conduct all future proceedings (see Document No. 49) seeks summary judgment for appropriate remedies from Rick's violation of the ACPA.

**Discussion**

15 U.S.C. § 1125(d)(1)(A) states in pertinent part:

A person shall be liable in a civil action by the owner of a mark, including a personal name which is protected as a mark under this section, if, without regard to the goods or services of the parties, that person has a bad faith intent to profit from that mark, including a personal name which is protected as a mark under this section; and registers, traffics in, or uses a domain name that is distinctive at the time of registration of the domain name, or is identical or confusingly similar to that mark.

Similarly, 15 U.S.C. §1125(d)(1)(C) provides in part: "[a]ny civil action involving the use of a domain name under this paragraph, a court may order the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark."

Having established, through Judge Harmon's grant of summary judgment, Defendant's violation of 15 U.S.C. §1125(d)(1)(A) and (C), Plaintiff seeks statutory damages under §1125(d)(1)(A) and transfer of the Domain Name under §1125(d)(1)(C). In addition, Plaintiff

seeks a permanent injunction against further use of the Domain Name or any other domain name that incorporates Plaintiff's JUST BULBS trademark, as well as an award of reasonable attorney fees and costs. Finally, Plaintiff seeks such other and further relief as the Court deems just and appropriate.

> Under §1125(d)(1)(C),
>
> In any civil action involving the registration, trafficking, or use of a domain name under this paragraph, a court may order the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark.

Also, under 15 U.S.C. §1117(a),

> The several courts vested with jurisdiction of civil actions arising under this chapter shall have power to grand injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark office or to prevent a violation under subsection (a), (c), or (d) of section 1125 of this title.

In addition, under § 1117(d), the amount of statutory damages shall be set by the court in an amount between $1,000 and $100,000 per domain name, as the court considers just. A prevailing plaintiff who elects statutory damages may also be awarded attorney fees under "exceptional circumstances." *Id. See Rolex Watch U.S.A., Inc. v. Mills*, Case No. 12-CV-00061-L, 2012 U.S. Dist. LEXIS 167008 *12 (N.D. Tex., Nov. 26, 2012). To merit an award of attorney's fees, "[t]he prevailing party has the burden to demonstrate the exceptional nature of the case by clear and convincing evidence. An exceptional case involves acts that can be called 'malicious,' 'fraudulent,' 'deliberate,' or willful.'" *Schlotzsky's LTD. V. Sterling Purchasing and Nat'l Distrib. Co., Inc.*, 520 F.3d 393, 402 (5th Cir. 2009). A finding of bad faith in an ACPA case does not constitute a finding of malicious, fraudulent, willful or deliberate behavior to justify an award of attorney's fees. *Bd. Of Supervisors for La. State Univ. Agric. & Mech. Coll. V. Smack Apparel Co*, 550 F.3d 465, 491 (5th Cir. 2008).

### A. Transfer of Domain Name to Plaintiff

Plaintiff, having been awarded summary judgment as to Defendant's bad faith and violation of the ACPA by engaging in cybersquatting, argues he is entitled to receive transfer of the Domain Name. *See, e.g., March Madness Ath. Assoc. LLC v. Netfire Inc.*, 120 Fed. Appx. 540, 543 (5th Cir. 2005) (directing transfer of infringing domain name though, transfer of the domain is not a requirement, as courts have ordered something other than a transfer of the domain on multiple occasions); *GlobalSantaFe v. globalsatnafe.com*, 250 F. Supp. 2d 610 (E.D. Va. 2003) (ordering the registry to disable resolution of the domain name rather than cancelling it, upon request of the trademark owner); *Mattel, Inc., v. Adventure Apparel*, 2001 U.S. Dist. LEXIS 13885 (S.D.N.Y. Sept. 7, 2001) (ordering domain names barbiesbeachwear.com and barbiesclothing.com cancelled instead of transferred because "there is a conceivable, non-infringing use of the domain names").

The first Uniform Dispute Resolution Policy ("URDP") panel determined Ricks had a bona fide use of the Domain name, *see* 2003 UDRP Panel Decision, Case No. D2003-0491, Dated October 9, 2003 at 6B, showing a conceivable non-infringing use of the domain name. *See Mattel, Inc.*, 2001 U.S. Dist. LEXIS 13885. However, unlike *GlobalSantaFe*, Plaintiff specifically requested transfer of the domain name. Additionally, Ricks exercised bad faith when he violated the ACPA by cybersquatting. The Court concludes, in its discretion, that Plaintiff is entitled to transfer of the Domain Name.

### B. Permanent Injunction Against Defendant

Plaintiff also requests a permanent injunction against further use of the Domain Name or any other domain name that incorporates Plaintiff's JUST BULBS trademark. A court may grant a permanent injunction for a violation of the ACPA provisions if a plaintiff can prove: (1) actual

7

success on the merits; (2) no adequate remedy at law; (3) that the threatened injury to the plaintiff outweighs any damage to the defendant; and (4) the injunction will not disserve the public interest. §1116(a); 1125(d). *See Chanel, Inc. v. P'ships & Unincorporated Assocs.*, Case No. 12-02085, 2013 U.S. Dist. LEXIS 138195, *11; 2013 WL 5425252 (S.D. Tex. 2013). Only three of the four prongs are at issue, as Ricks concedes actual success on the merits.

For the second prong, Ricks argues Plaintiff may be awarded statutory damages, serving as an adequate remedy at law. However, statutory damages do not prevent Ricks from infringing on JUST BULBS trademark in the future. *W.B. Music Corp. v. Big Daddy's Entm't, Inc.*, No. EP-05-CA-267-PRM, 2005 U.S. Dist. LEXIS 32216 at *9-10 (W.D. Tex. Oct. 18, 2005) (finding plaintiffs had no other practicable remedy at law, and money damages would not prevent future infringement, as evidence showed defendants did not take their infringing activity seriously). Courts in the Fifth Circuit have awarded transfer of infringing domain names and statutory damages. *See, e.g., Kiva Kitchen & Bath, Inc. v. Capital Distrib. Inc.*, 319 Fed. Appx. 316, 321 (5th Cir. 2009); *Chanel, Inc.*, Case No. 12-02085, 2013 U.S. Dist. LEXIS 138195. Therefore, statutory damages are not necessarily an adequate remedy at law, and plaintiff may be entitled to transfer of domain name.

Under the third prong the Plaintiff argues that compelling Ricks to comply with the law does not outweigh the damage Plaintiff's business could experience should future infringement continue. Ricks mentions investing in the Domain Name and being unable to see a return on his investment, should he be permanently enjoined. However, Ricks never explicitly states a dollar amount he stands to lose. While it is not clear how much the Plaintiff would be injured, should a permanent injunction be denied, Ricks does not show any damage to him would result, thus the court finds this element favors the Plaintiff.

Lastly, the fourth factor also weighs in favor of the Plaintiff. A permanent injunction promotes compliances with intellectual property ("IP") law, *see Arista Records, Inc. v. Kabani*, No. 3:03-CV-1191-H, 2004 U.S. Dist. LEXIS 7877 at *12-13 (N.D. Tex. Apr. 23, 2004). Ricks is correct the links he provides on the Domain Name, should he be enjoined, would no longer be accessible to the public. However, there is a greater societal interest in upholding IP laws, than allowing the public access to information on one specific domain, especially when the same information is available on other websites. Since all four factors weigh in favor of the Plaintiff, the Court finds a permanent injunction is appropriate and will be granted.

### C. Award of Statutory Damages

Because Ricks violated the ACPA, Plaintiff is entitled to statutory damages between $1000 and $100,000 for each Domain Name violating the ACPA. §1117(d). The purpose of statutory damages is not merely to compel restitution of profit but also discourage future wrongful conduct in the future. *See E&J Gallo Winery . Spider Webs, Ltd.*, 286 F.3d 270, 278 (5th Cir. 2002). Plaintiff seeks the maximum amount of statutory damages for cybersquatting, which is typically reserved for only the most egregious offenders. *See International Bancorp L.L.C. v. Soceite Des Bains de mer et du Cercle des Etrangers a Monaco*, 192 F. Supp. 2d 467, 490 (E.D. Va. 2002), aff'd, 329 F.3d 359 (4th Cir. 2003).

A maximum award of statutory damages looks to the past history of a defendant to see if he is an egregious offender. In *Rolex Watch U.S.A.*, defendants established a pattern of infringing conduct, by owning 296 domain names, many of which contained trademarked terms. Furthermore, the infringing domain operated for at least nine months, with the defendant refusing to desist even after receiving notice.

Ricks has been sued in seventeen federal lawsuits for trademark infringement and cybersquatting. The vast majority of these lawsuits resulted in settlement and transfer of the domain name at issue. (Document 51 at 14). Additionally, Judge Harmon expressly found that Ricks had acted in bad faith by providing links to the Domain Name for light bulbs, instead of flower bulbs. (Document 51 at 15–16).

Ricks argues he is not an egregious offender, and there is no need for deterrence since little if any harm has been done to Plaintiff. In cases where little if any harm has been done to Plaintiff, minimum statutory damages are appropriate. *Mattel, Inc.*, 2001 U.S. Dist. LEXIS 13885. Also, Ricks seeks to distinguish *Rolex Watch U.S.A.* from the present scenario, as the defendant in *Rolex Watch U.S.A.* registered the infringing domain name, and then offered to transfer or sell the infringing domain name. Conversely, Ricks purchased the Domain Name at auction and never offered to sell the domain to Plaintiff. (Document 51 at 18).

Given Ricks acted in bad faith, has previously engaged in cybersquatting, and the need to discourage Rick's future wrongful conduct, more than the minimum amount of statutory damages is appropriate. However, unlike *Rolex Watch U.S.A.*, Ricks obtained the Domain Name legally and did not seek financial gain from Plaintiff after purchasing the Domain Name. Given Ricks acted in bad faith only years after purchasing the Domain Name, maximum statutory damages is also not appropriate.

In *E&J Gallo*, 286 F.3d at 278, the court awarded $50,000 per domain name where defendants registered domain names in bad faith and demonstrated an unwillingness to comply with the requirements of the ACPA. Rick's prior behavior indicates it is necessary to deter him from continuing to register domain names without considering possible infringements on

10

registered trademarks. Therefore, the court finds it is appropriate to award Plaintiff statutory damages in the amount of $50,000.

### D. Attorney's Fees to Plaintiff

Recovery of attorneys' fees is contingent on Plaintiff finding intent and knowledge on the part of Ricks to divert potential customers to his website. *See Kiva Kitchen & Bath, Inc. v. Capital Distrib. Inc.*, 319 Fed. Appx. 316, 321 (5th Cir. 2009). Ricks is in the business of buying and selling domains, and in the process has purchased over 5,000 domain names. On only one occasion, out of thousands of URLs purchased, did Ricks check to confirm whether the proposed domain name infringes the rights of a trademark owner.

In granting summary judgment, Judge Harmon noted, Ricks chose domain names that are so famous or are so specific that they suggest prior knowledge or reckless disregard of third party trademark rights. (Document 39 at 28). Additionally, Ricks was on notice of Plaintiff's trademark as early as 2003, because of the 2003 WIPO decision[1], that allowed Ricks to continue using the Domain Name for flower bulbs. Thus, when Ricks started using the Domain Name in 2010 to advertise light bulbs, the same goods Plaintiff sells, Ricks began benefiting from the Plaintiff's name in bad faith. While Ricks may be correct that of the thousands of domains he purchased "[o]nly an inconsequential fraction coincidentally overlap with a registered trademark," Judge Harmon rejected this argument as "some of these marks are so famous that any argument by Defendant.... is unbelievable." *Id.* at 27.

Ricks argues that §1117(a) does not authorize attorney's fees for a plaintiff seeking statutory damages under §1117(d). This is inaccurate. Plaintiffs are entitled to recover

---

[1] 2003 WIPO Decision established Ricks was using the Domain Name in good faith, after legally purchasing the Domain Name when it expired and used it to advertise flower bulbs and not light bulbs.

defendant's profits, damages, and attorneys fees when a violation under §1125(a) or (d) takes place. Here, Plaintiff is only seeking to recover attorney's fees under §1117(a). Judge Harmon's summary judgment established a violation of §1125(d) took place, and now the only issue is whether this is an "exceptional case." In this regard, the record shows Ricks was aware of Plaintiff's JUST BULBS registered trademark and chose to use the Domain Name rather than a number of other domain names. Ricks had knowledge using the Domain Name to sell light bulbs would constitute a bad faith intent to profit, making Rick's conduct willful and malicious. This is, therefore an exceptional case, that warrants an award of attorney's fees. As the amount of attorney's fees is not in dispute, Plaintiff is entitled to recover attorney's fees in the amount of $69,850.50 and court costs in the amount of $3,983.60, for a total of $73,834.10 in attorney's fees and costs. *See* (Document 51 at 22).

### E. Conclusion of Order

Based on the submissions of the parties, and Judge Harmon's summary judgment decision, evidence shows Ricks is in the habit of committing cybersquatting violations on a regular basis and exercised willful and malicious conduct when he attempted to profit by using Plaintiff's trademark. The Court concludes, in its discretion, that a transfer of the domain name and permanent injunction are appropriate under §1125(d); that Plaintiff is entitled statutory damages of $50,000 under §1117(d); and that Plaintiff should recover its attorney's fees and costs ($73,834.10).

Accordingly, it is

ORDERED that Plaintiff's Motion for Summary Judgment (Document No. 51) is GRANTED, and summary judgment is GRANTED, Defendant, his agents, servants, employees, subsidiaries, affiliates, and all persons in active concert or participation with, through, or under any of them

are enjoined from committing any acts of cybersquatting with respect to the JUST BULBS trademark; Plaintiff shall recover from Defendant under 15 U.S.C. §1117(d) the amount of $50,000 in statutory damages; the domain name www.justbulbs.com shall be transferred from Defendant to Plaintiff; and Plaintiff shall recover from Defendant its reasonable attorney's fees and all costs of court, totaling the amount of $73,834.10. The parties shall within fourteen (14) days after entry of this order, submit a proposed judgment that reflects the determination made within.

Signed at Houston, Texas, this 18th day of July, 2017

**FRANCES H. STACY**
**UNITED STATES MAGISTRATE JUDGE**